(No. 2195— ▮▮▮▮▮▮▮▮▮)

BRUCE C. SMITH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1934.*

ROYAL W. IRWIN AND EWART HARRIS, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Bruce C. Smith was a private in the 108th Observation Squadron of the 33rd Division, Aviation, I. N. G., and in his complaint asks compensation for personal injury alleged to have been incurred on August 14, 1931, while in Summer camp at Camp Grant, Rockford, Illinois. In his declaration, he makes claim under Sections 10, 11, 13 and 14, Article XVI, Chapter 129, Smith-Hurd Illinois Revised Statutes, 1931:

One-half active service pay under Section 4 of said Article, to-wit: $7.00 per week from August 15, 1931 to June 23, 1933 ............................................$ 644.00
Necessary hospital charges................................ 646.45
Medical and Surgical care................................ 1,372.00
Medicines and appliances................................ 82.10
Impairment and disablement of left arm and shoulder.... 5,000.00

Total Claim ....................................$7,744.55

The record discloses that during the second week claimant was in camp in August, 1931, a boil appeared on his right arm, for which he received some attention by the Medical Department. Later another appeared on the same arm. On the day his squadron broke camp, claimant was assigned to pull up tent stakes. He was unable to use his right arm at the time because of pain, and was pulling with his left arm. In doing so, he felt a sprain or strain in his left shoulder. He left camp the next morning and thereafter saw Captain Fenwick of the Medical Corps on August 24th. He testified that the left shoulder had been paining him during the week after leaving camp, and the boils on his right arm were continuing to require medical attention. At that time there was no outside infection apparent on the left shoulder, but he could not lift the left arm. Claimant was sent to St. Luke's hospital August 29, 1931, and was operated on by Dr. Pontius for pus in the left shoulder joint, same coming from an opening in the bond at the deltoid tuberosity. Later this pus formation increased in the right chest cavity and the blood stream was found to be infected. On the 28th of September abscesses in the middle of the right leg were discovered from the blood stream, and on October 6th an abscess on the left leg was opened. The shoulder continued to drain and the doctor's testimony is that the patient had osteomyelitis or infection of the bone; that he was returned to the hospital on November 15th and the bone was drilled, x-rays taken and he was discharged again

November 30, 1931. On February 6, 1932, another operation was performed and he was treated for the infected area around the bone until discharged March 4, 1932. The joint was again put in a cast in April and he was discharged permanently from the hospital May 14, 1932. The doctor's testimony was further that the infection healed in August, 1932, resulting in a stiff shoulder joint. The doctor testified further that the condition he found in the left shoulder might, with reasonable medical certainty, have been caused by the sprain; that there was an infection existing in the body at the time and that the effect of the sprain was to localize the infection at the point where the sprain occurred, and that the sprain having occurred, the later symptoms would follow. He further testified, "I would say the infected blood was the result of the boil, and the trauma (injury) was the cause of the localization. He would not have had osteomyelitis if the blood stream was not infected. There was a previous condition, and a sprain, 'It has to have the two,' one must precede the other. The blood condition must be present when the sprain is received."

Dr. Samuel Plummer, another witness called by claimant, when asked to what he ascribed the inflammation of the bone in the upper part of the left arm, stated, "Taking into consideration the history of the case as here given, the presence of boils at the time, a comparatively slight injury which was felt in the region of the upper part of the arm bone near the shoulder; that injury had been the cause of localizing the infection which was in the blood from the boils." And in answer to the further question, "The injury you refer to occurred through spraining the shoulder pulling stakes?", "Yes."

The contention is made that under the provisions of Section 10 of Article 16 of the Military Code there must first be a hearing by Medical Board upon a claim by an injured member of the National Guard before the Court of Claims can properly consider such claim. That section provides as follows:

"Any officer or enlisted man of the National Guard or Naval Reserve who may be wounded or disabled in any way, while on duty and lawfully performing the same, so as to prevent his working at his profession, trade or other occupation from which he gains his living, shall be entitled to be treated by an officer of the medical department detailed by the surgeon general, and to draw one-half his active service pay, as specified in Sections

3 and 4 of this article, for not to exceed thirty days of such disability, on the certificate of the attending medical officer; if still disabled at the end of thirty days, he shall be entitled to draw pay at the same rate for such period as a board of three medical officers, duly convened by order of the Commander-in-Chief may determine to be right and just, but not to exceed six months, unless approved by the State Court of Claims."

## Sec. 10, Article XVI, Military Code.

There has been no consideration of the matter by Medical Board and the Attorney General's report, found in the record, shows a report by Captain Fenwick of the Medical Corps that the treatment given at the camp during the service of the soldier was for boils not incurred "in line of duty." No further treatment was rendered by anyone in the Medical Corps to Private Smith after leaving Camp Grant, and apparently no claim based upon the sprain to the left shoulder was ever put in line for consideration by any Medical Board. There is nothing in the record to indicate that any application for pay or medical treatment based upon the sprain or injury to claimant's left shoulder has ever been made by claimant through the Military Department. The court is of the opinion that it was the intention of the Legislature that Section 10 should apply to all claims except those resulting from injury or death in active duty under direct commands pursuant to orders from the Commander-in-Chief, but there is some doubt as to the intent of Section 11, and in justice to claimant, we resolve the doubt in his favor. Section 11 provides as follows:

"In every case where an officer or enlisted man of the National Guard or Naval Reserve shall be injured, wounded or killed while performing his duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief, said officer or enlisted man, or his heirs or dependents, shall have a claim against the State for financial help or assistance and the State Court of Claims shall act on and adjust the same as the merits of each case may demand. Pending action of the Court of Claims the Commander-in-Chief is authorized to relieve emergency needs upon recommendation of a board of three officers, one of whom shall be an officer of the Medical department."

## Sec. 11, Art. XVI, Military Code.

Under Section 10, a board of three medical officers should consider and pass upon claims of this character, and if their findings indicate that compensation in excess of six months should be paid, the State Court of Claims should then review

the matter for approval or disapproval of such additional time over the said six months period.

Under the provisions of Section 11, Article XVI of the Military Code, the Court of Claims is given authority to adjust claims arising thereunder as the merits of each case may demand.

The real underlying cause of claimant's condition was not any injury incurred in line of duty. Claimant had an infected condition of blood from which boils resulted before and after the sprain. Much of the hospital and medical care he received was for these boils in the arms and legs and would have been required regardless of the sprain. According to the doctor's testimony, the sprain localized the infection in the bone of the left shoulder, resulting in osteomyelitis. In compensation cases, when a workman has a pre-existing disease which is aggravated by an accident sustained in the course of his employment, he is entitled to compensation to the extent, and in the proportion in which the pre-existing disease is increased or aggravated.

It is difficult to ascertain here to what extent the pre-existing disease of the blood was increased or aggravated by the sprain, and as to how much of the expense incurred by claimant for hospitalization and medical and surgical care can be attributed to the injury to the shoulder and how much of it was necessarily obtained for the patient's care in obtaining relief from the boils and general infection under which he continued to suffer for many months. Dr. Pontius' bill shows that there were four chest operations; also that there were four operations for abscesses of the legs. These two items totalled $80.00, and formed a part of his general bill of $1,372.00. There was also a charge of $250.00 for emergency service on August 29th, at which time the claimant states his legs were also operated upon or treated (Record page 10). How many of the 147 hospital visits at $3.00 each were necessarily made because of the shoulder condition and what part of same should be chargeable to his general physical disability does not appear. The same is true in regard to 23 home visits made by Dr. Pontius at $4.00 per call. Likewise, the 82 office calls at $2.00 each. The testimony of the plaintiff is also disputed by Dr. Pontius as to the last hospitalization date; claimant alleging that it was in May, 1933, while Dr. Pontius testified,

"The plaintiff is wrong, the last hospitalization was in August, 1932."

As above stated, the court is in grave doubt as to claimant being entitled to consideration of his claim by the Court of Claims at this time, but giving consideration to his rights under Sections 10 and 11 of Article XVI of the Military Code, and, in an endeavor to grant to him such award as the merits of his case seem to demand, an award is recommended upon the following basis:

| | |
|---|---:|
| ½ active service pay under Sec. 10 of Article XVI Military Code, to-wit: $7.00 per week from August 15, 1931 to August 15, 1932 | $ 364.00 |
| ½ Hospital charges incurred during said period, being proportionate part allowed in treatment of shoulder | 323.25 |
| ½ medical and surgical care during said period, being proportionate part allowed in treatment of shoulder | 686.00 |
| ½ Medicines and appliances | 41.00 |
| 30% loss of use of arm | 675.00 |
| | $2,089.25 |

An award is therefore made in the sum of Twenty Hundred Eighty-nine and 25/100 Dollars ($2,089.25).